CRAWFORD and others *v.* MELLOR & RITTENHOUSE.

*(District Court, E. D. Pennsylvania.* April 7, 1880.)

LIBEL—DELAY IN UNLOADING VESSEL—LIABILITY OF OWNER OF CARGO FOR DETENTION OF VESSEL.—The owner of a cargo, who delays unloading it after the vessel arrives at the designated wharf, is liable to the owners of the vessel for damages for its detention, although by the terms of his purchase of the cargo the vessel was employed and the freight paid by the shipper.

A. purchased coal from B., to be delivered at a certain wharf. B. employed a vessel to transport the coal. When the vessel arrived at the wharf the master handed the bill of lading for the coal to A.'s agent, but the latter delayed unlading for five days. *Held*, that A. was liable to the owners of the vessel for its detention.

In Admiralty.

Libel by the master and owners of a barge against the consignees of a cargo to recover damages for detention of the vessel. An answer was filed and testimony taken, which disclosed the following facts: Respondents, who were manufacturers in Philadelphia, purchased of Bright, Thomas & Co., of that city, 1,200 tons of coal, to be delivered by the vendors "along-side Kersey's wharf," on the Schuylkill river, at $1.75 per ton. At the same time respondents made a contract with Kersey, the owner of the wharf, to unload and store the coal and deliver it at their manufactory. Bright, Thomas & Co., in carrying out their contract, shipped, on libellants' barge, 204 tons of coal, which, by the terms of the bill of lading, were to be transported to Kersey's wharf and delivered to respondents. The bill of lading contained no stipulation for demurrage. Libellants' vessel arrived at Kersey's wharf, and the master immediately handed the bill of lading to the superintendent employed by Kersey, but, owing to the fact that there were seven boats at the wharf ahead of libellants' boat, the latter was detained five days before the superintendent commenced to unload the cargo. The master testified: "We lay outside the wharf, two abreast, and I took my turn with the other boats." After the cargo was discharged the master received back the bill of lading, with an indorsement that the coal had been unloaded, and subsequently he was paid the freight by Bright, Thomas & Co. This libel was

then filed to recover from respondents $32 damages for the detention of the vessel.

*John A. Toomey*, for libellants.

The delivery of the bill of lading to respondents' agents was a delivery of the cargo, and created a privity between these parties. *The Schooner Mary Ann Guest*, Olcott, 498; *Griffiths* v. *Ingledew*, 6 S. & R. 429; *Conrad* v. *Ins. Co.* 1 Pet. 446; *King* v. *Meredith*, 2 Camp. 639.

Where the consignee is owner of the cargo he is liable for the detention in unloading. *R. Co.* v. *Northam*, 2 Benedict, 1; *Robbins* v. *Welsh*, 9 Phila. R. 409.

*James S. Williams*, for respondents.

The consignees had no interest in this cargo until it came "along-side" the wharf. The delivery of the bill of lading to the respondents' agents, who were authorized merely to "unload, store and deliver" the coal, could in no way affect their rights under the contract of purchase.

Even if the consignees were the owners of the cargo they are not liable here, because they were not the freighters. *Sprague* v. *West*, 1 Abb. Adm. Rep. 548; *Donaldson* v. *McDowell*, 1 Holmes, 290; *Jesson* v. *Solley*, 4 Taunt. 52.

Further, they are not liable, because the detention was merely owing to the crowded state of the dock, and in no manner their fault. *Clendaniel* v. *Tuckerman*, 17 Barb. 191; *Cross* v. *Beard*, 26 N. Y. 85; *Trans. Co.* v. *Hawley*, 1 Daly, 333; *Rodgers* v. *Forrester*, 2 Camp. 483; *Dobson* v. *Droop*, 1 Moody & Malkin, 443.

BUTLER, J. From the time the bill of lading was received by the respondents' agent, at least, they were owners of the coal. They could, thereafter, have transferred it to whom they pleased, and if the libellants had carried it away they could have sustained an action for its value. It was kept near the wharf in pursuance of their order, and they are justly responsible for the use of the vessel during the time it was thus detained. If not satisfied to be so responsible they should have designated another place, when this was found to be occupied.

The difficulty respecting privity between the parties, dis-

appears when the ownership of the coal is traced to the respondents. The law implies a contract from the relations of the parties growing out of the transaction. *Robbins* v. *Welsh*, 9 Phila. R. 409; *Griffiths* v. *Ingledew*, 6 S. & R. 429; *R. Co.* v. *Northham*, 2 Benedict's R. 1. The case is readily distinguishable from an ordinary claim for demurrage where the obligation of the vessel is to carry to a particular port, leaving to it the selection of a place to unload.

A decree must be entered for the libellants.